HOWARD D. JOHNSON COMPANY *vs.* FRANCIS W. MADIGAN, JR., trustee.

Worcester. January 11, 1972. — March 21, 1972.

Present: TAURO, C.J., CUTTER, QUIRICO, & HENNESSEY, JJ.

*Landlord and Tenant,* Forfeiture of lease. *Equity Jurisdiction,* Forfeiture.

Relief in equity against forfeiture of a lease for breach through "inadvertence" of a covenant requiring submission to the lessor at certain times of gross sales figures in order to fix a percentage rental on annual gross sales over a certain minimum amount was proper in the circumstances where the lessee promptly submitted the reports after being notified of the failure to supply them notwithstanding that they were not signed by financial officers of the lessee as required by the lease, and the reports showed that there were not annual gross sales in excess of such minimum amount. [456–459]

BILL IN EQUITY filed in the Superior Court on June 29, 1970.

The suit was heard by *Lappin,* J.

*Burton Chandler* for the defendant.
*Harry Zarrow* for the plaintiff.

TAURO, C.J.  The defendant appeals from a final decree granting the plaintiff equitable relief against the forfeiture of a lease.  The defendant, as the assignee of the lease, sought to terminate the lease on April 6, 1970, because of the plaintiff's failure to supply certain business statements in accordance with the lease requirements.

The pertinent evidence is as follows.  On July 1, 1965, the plaintiff leased a certain parcel of land in Worcester from C. Lincoln Giles for a period of twenty years with certain options for renewal.  The plaintiff erected a "Howard Johnson's" restaurant on the land and subleased the premises to a third party.  On August 1, 1969, Giles deeded the property and assigned the lease to the defendant.  The lease provides that, in addition to an annual rental of $18,500, the lessee shall each year pay a "percentage rental" equal to five per cent of the amount of the lessee's annual gross sales over $370,000; that the lessee shall submit to the lessor quarterly statements of gross sales, and within thirty days of the end of each rental year, a yearly statement of gross sales; and that "[a]ll such statements shall be signed by a responsible and authorized financial officer of the Lessee certifying as to the amount of gross sales [for the accounting period]." The lease also contained the following provisions: "In the event that the Lessee shall fail to pay the rent or any part thereof when due or shall violate or fail to perform any of the covenants . . . to be performed . . . [on the part of the Lessee], the Lessor may elect . . . 2.  To terminate this lease and to resume possession of the demised premises."

In a letter dated February 17, 1970, the defendant advised the plaintiff of its failure to furnish quarterly and yearly statements since January, 1969, and requested compliance by the plaintiff with the provisions of the lease requiring such statements.  The plaintiff replied by letter dated March 24, 1970, that it was having difficulty

obtaining figures from its sublessee but it would comply as soon as figures were available. On April 6, 1970, the defendant sent the plaintiff notice of termination of the lease, and on April 14, 1970, the plaintiff sent the defendant a letter containing monthly gross sales figures for January, 1969, through February, 1970, and a statement of gross sales for the rental year ending July 31, 1969. Subsequently on August 18, 1970, after this suit was brought, the plaintiff submitted its yearly statement for the rental year ending July 31, 1970. The first statement was signed by "Charles Balkam, Division Accounting Supervisor," and the second by "Mrs. Helen Taft, Corporate Accounting Supervisor." The plaintiff does not dispute the defendant's contention that neither official is a financial officer of the plaintiff corporation. Nor is it disputed that the plaintiff's gross sales have never reached $370,000 a year and that the plaintiff has never been required to pay a percentage rental in addition to its minimum annual rental.

On June 29, 1970, the defendant's writ for summary process against the plaintiff was entered in the Central District Court of Worcester, and on the same day the plaintiff brought the present proceeding in the Superior Court. After a hearing on December 2, 1970, in the Superior Court, the judge found that "there had been a breach in one of the covenants [of the lease]"; that the breach "came about as a result of inadvertence on the part of the [plaintiff]"; and that the defendant suffered no injury as the result of the breach. The sole issue presented on appeal is whether equitable relief was properly granted in the circumstances of this case.

In our decisions we have followed the rule that equity does not favor a forfeiture. *Judkins* v. *Charette*, 255 Mass. 76, 83, and cases cited. *Eno Sys. Inc.* v. *Eno*, 311 Mass. 334, 338. After examining our prior cases,[1] we

---

[1] *Atkins* v. *Chilson*, 11 Met. 112. *Mactier* v. *Osborn*, 146 Mass. 399. *Lundin* v. *Schoeffel*, 167 Mass. 465. *Gordon* v. *Richardson*, 185 Mass. 492. *Oesting* v. *New Bedford*, 210 Mass. 396. *Darvirris* v. *Boston Safe Deposit & Trust Co.* 235 Mass. 76. *Finkovitch* v. *Cline*, 236 Mass.

said in the *Eno* case, *supra*: "Relief against forfeiture
has been granted although a lessee has failed to pay rent
at the times and in the manner designated by the lease
and even if such failure has been wilful and intentional,
or where the lessee has breached a collateral covenant to
repair or to furnish fire insurance and such breach has
been due to accident or mistake and no harm has resulted
to the lessor, or where, if the lessor was harmed, the dam-
age could be readily ascertained and compensation paid
so that the lessor would be put in the same position as if
no such breach had occurred.  But where the conduct of
a lessee has been such as not to commend itself to a court
of equity or where the circumstances of a particular case
are such that the granting of relief would impose an
unjust and unreasonable hardship on the lessor, then a
forfeiture has not been set aside."  Subsequent applica-
tions of these principles include *Paeff* v. *Hawkins-
Washington Realty Co. Inc.* 320 Mass. 144, 148, and
*Mulcahy & Dean, Inc.* v. *Hanley,* 332 Mass. 232, 234.

While the defendant in the instant case does not deny
these principles, he contends that the plaintiff is not en-
titled to equitable relief on two grounds or either of them.
As his first ground, he asserts that, although the plaintiff
submitted gross sales figures, its statements were not
signed and certified by a responsible and authorized
financial officer of the lessee as required by the lease.  We
do not agree that such omission should bar equitable
relief.  By providing monthly reports and a yearly state-
ment within two months of being notified of its failure to
supply statements, we believe that, despite any technical
nonconformity with the lease provisions, the plaintiff
sufficiently cured its breach to warrant the granting of
equitable relief by the court below.  See *Davis & O'Connor
Co.* v. *Shell Oil Co. Inc.* 311 Mass. 401, 405.  Compare
*Darvirris* v. *Boston Safe Deposit & Trust Co.* 235 Mass.
76, 78.  Furthermore, there was no evidence that the

196.  *Judkins* v. *Charette,* 255 Mass. 76.  *Kaplan* v. *Flynn,* 255 Mass.
127.  *Barry* v. *Frankini,* 287 Mass. 196.

defendant raised his present objection prior to this suit. He should have made his objection known at the time the plaintiff first submitted the statements without the required signature and certification of a responsible, authorized financial officer.

Second, the defendant maintains that, for equitable relief to be granted, there must always be proof that the plaintiff's breach was the result of "accident or mistake," and that here where the judge made a finding of only "inadvertence," a prerequisite for the issuance of an equitable decree was lacking. We do not agree. In *Finkovitch* v. *Cline*, 236 Mass. 196, 199, Chief Justice Rugg stated: "Equity grants relief to tenants against forfeiture for breach of a covenant to pay rent *even though the failure to pay is wilful on the part of the lessee*" (emphasis supplied). See *Judkins* v. *Charette*, 255 Mass. 76, 83; *Eno Sys. Inc.* v. *Eno*, 311 Mass. 334, 338; *Mulcahy & Dean, Inc.* v. *Hanley*, 332 Mass. 232, 234. In the instant case, where the covenant broken required the submission of gross sales figures in order to fix a percentage rental, we think that the covenant broken is ancillary to the covenant to pay rent and the same rule is applicable in either case. We hold, therefore, that even absent a showing of "accident or mistake" the judge was warranted in granting equitable relief in the circumstances. See *Lundin* v. *Schoeffel*, 167 Mass. 465, 468–470. Compare cases involving breaches of independent, collateral covenants; *Mactier* v. *Osborn*, 146 Mass. 399, 402–403 (covenant to insure); *Gordon* v. *Richardson*, 185 Mass. 492, 495 (covenant to pay taxes); *Kaplan* v. *Flynn*, 255 Mass. 127, 129–131 (covenant to keep "in good tenantable repair").

Here the breach did not prejudice the defendant,[2] and

---

[2] Even if the plaintiff had submitted statements in the required form, since gross sales never reached $370,000 a year, no further rent would have been due. Also the fact that the defendant had the right under the lease to inspect the plaintiff's books and records, but that he apparently did not see fit to do so, indicates the defendant's own belief that no additional rent was due and is further evidence supporting a finding that the defendant was not harmed.

361 Mass. 459                                                        459

the plaintiff demonstrated good faith in its subsequent substantial compliance. We are of the opinion that the court below properly granted relief against forfeiture. See *Lundin* v. *Schoeffel*, 167 Mass. 465, 470; *Finkovitch* v. *Cline*, 236 Mass. 196, 199–200. See also annotation, 31 A. L. R. 2d 321. See generally 49 Am. Jur. 2d., Landlord and Tenant, §§ 1078–1093. The "court has power to impose equitable conditions upon the relief granted." *Thomas* v. *Beals*, 154 Mass. 51, 55, quoted in *Jurewicz* v. *Jurewicz*, 317 Mass. 512, 517. It is ordered that the final decree be modified so as to provide that the plaintiff submit to the defendant quarterly and yearly statements, signed and certified by a responsible and authorized financial officer, for each quarter and for each rental year since January, 1969. With this modification, the final decree is affirmed, and costs of appeal are awarded to the plaintiff.

*So ordered.*